UNITED STATES DISTRICT COURT      O
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. L-08-109 |
| | § | |
| JULIO PEREZ, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the United States' ("Plaintiff") Motion for Summary Judgment. [Dkt. No. 34].[1] After duly considering the summary judgment motion, the supporting brief, and the governing law, Plaintiff's motion is **GRANTED**.

### I. BACKGROUND

#### A. Relevant Facts

For tax years 1983 and 1984, Julio Perez, Jr. ("the Decedent") failed to file a federal income tax return.[2] [Dkt. No. 34, Ex. 1 & Ex. 7]. Consequently, in 1988, the Internal Revenue Service ("IRS") filed a substitute for return assessment against the Decedent for these tax years. [*Id.*, Ex. 7]. On May 5, 1989, Plaintiff recorded a Notice of Federal Tax Lien against the Decedent. [*Id.*, Ex. 8]. This notice was recorded in Webb County, TX. [*Id.*].

For tax years 1987, 1989, 1990, 1991, 1992, 1993, 1995, 1996, 1997, 2001, 2004, and 2005, the Decedent amassed federal tax debts amounting to $544,372.26. [*Id.*, Ex. 3]. On September 22, 1993, Plaintiff recorded another Notice of Federal Tax Lien against the Decedent

---

[1] "Dkt. No." refers to the docket number entry in the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing.
[2] The facts presented are uncontroverted, as Defendant Jose Trevino has presented no response to Plaintiff's summary judgment motion.

for tax years 1987, 1988, 1989, for an amount of $44,910.48. [*Id*., Ex. 9]. Plaintiff recorded this notice in Webb County, TX. [*Id*.]. On November 17, 2004, Plaintiff filed a Notice of Federal Tax Lien against the Decedent, for tax years 1990, 1991, 1992, 1993 and 1995, in the amount of $62,652.80. [*Id*., Ex. 10]. On the same date, Plaintiff filed a Notice of Federal Tax Lien against the Decedent, as well as Deborah V. Perez ("Deborah Perez"), for $81,865.06 for tax years 1996 and 1997. [*Id*., Ex. 7]. Each of these notices was recorded in the real property records of Webb County, TX. [*Id*.].

Previously, in September 1990, the Decedent had entered into a surface partition agreement, through which he received a 33.5 acre tract of land in Webb County, TX. [*Id*., Ex. 1 & Ex. 4]. As indicated in the partition agreement, the tract is described as follows: Tract A, containing 33.5 acres out of that certain partition of a 49.37 acre tract within Share No. 3 in Survey No. 729 and a 72.11 acres out of Survey No. 2257 in Webb County, Texas. [*Id*., Ex. 4]. According to Plaintiff, the Decedent had also inherited from his father, Julio Perez, the rights to a portion of the mineral interests contained within the 33.5 acre tract.[3] The Decedent's father had acquired the mineral interests under a deed from Jose Gutierrez. [*Id*., Ex. 5].

In 1992, the Decedent sold the 33.5 acre tract to Jose Trevino ("Defendant"). [*Id*., Ex. 13 at 13]. The Decedent gave Defendant a deed to the tract, though the deed was not signed. [*Id*., Ex. 16 at 18-19]. For this reason, Defendant did not record the deed he received. [*Id*., Ex. 16 at 19]. When he purchased the tract, Defendant did not check to determine whether any liens were filed against it in the deed records for Webb County. [*Id*.]. He also did not use a title company to determine whether any liens existed against the Decedent. [*Id*.]. He also did not ask the Decedent if any liens had been filed against him. [*Id*.].

---

[3] Plaintiff indicates that it has been unable to locate a document indicating a transfer of the mineral interests from Julio Perez to his son, the Decedent. [Dkt. No. 34 at 5]. Rather, Plaintiff directs the Court to a deed, filed in 2007, which shows that the Decedent sold a portion of mineral interests. [*Id*., Ex. 6].

On March 31, 2003, the Decedent executed a signed warranty deed to the 33.5 acre tract. [*Id*., Ex. 6 & Ex. 15 at 64]. At some point during 2003, the Decedent gave the signed deed to Defendant. [*Id*., Ex. 15 at 64]. Through the deed, the Decedent also transferred to Defendant one half of his interest in any oil, gas, and other minerals found in the acres. [*Id*., Ex. 6]. During his deposition, Defendant replied affirmatively when asked whether he recorded the deed in deed record of Webb County at some point during 2003. [*Id*., Ex. 16 at 18]. However, the warranty deed indicates that it was recorded on May 2, 2007. [*Id*., Ex. 6].

In July 2007, Defendant entered into an agreement to sell the 33.5 acre tract to Antonio Izaguirre. [*Id*., Ex. 17 at 46]. He sold the tract for $33,500, based on a contract for deed. [*Id*. & Ex. 18 at 51]. During his deposition, Defendant stated that, under the agreement, he receives a monthly payment from Izaguierre. [*Id*., Ex. 18 at 51]. However, Defendant also stated that he has yet to give Izaguirre a deed to the property, and will not do so until Izaguirre finishes payments under the contract. [*Id*.].

B.     **Procedural History**

On August 11, 2008, Plaintiff filed its Original Complaint against the Decedent and Deborah Perez, seeking to recover the Decedent's unpaid balance of federal taxes, penalties, and interests for tax years 1987, 1988, 1989, 1990, 1991, 1992, 1993, 1995, 1996, and 1997. [Dkt. No. 1, ¶¶ 1, 20-21]. Secondly, under section 6321 of the Internal Revenue Code, Plaintiff sought to enforce a federal tax lien against Decedent and Deborah Perez's interests in three properties, including the 33.5 acre tract and the associated portion of mineral interests. [*Id*., ¶¶ 22-23]. Additionally, Plaintiff sought to recover a ten percent surcharge of the amount of the debt under 28 U.S.C. §§ 3001 *et seq*. [*Id*., ¶ 24]. In addition to the Decedent and Deborah Perez, three other parties were named as defendants, including Julio Perez, III, and Defendant, who were alleged to

have an interest in the properties. Plaintiff also added the Texas Workforce Commission as a defendant, alleging that the Commission also had a tax lien against the Decedent and Julio Perez, III. [Dkt. No. 1, ¶¶ 7-9].

On March 24, 2009, Defendants filed a Notice of Death, indicating that the Decedent had died on February 16, 2009. [Dkt. No. 16]. Consequently, Plaintiff was ordered to add the Decedent's estate to the lawsuit, once the estate was created. [Dkt. No. 19]. On June 3, 2009, Jessica Galvan ("Galvan") was appointed as an independent administrator of the Decedent's estate. [Dkt. No. 20, Ex. 1]. Thereafter, Galvan was substituted as a party for the Decedent. [Dkt. No. 21]. On August 13, 2009, Plaintiff filed its First Amended Complaint, alleging that the Decedent also failed to pay federal income taxes for tax years in 2001, 2004, and 2005. [Dkt. No. 27]. Plaintiff thus also sought to recover for the unpaid balance of federal taxes, interests, and penalties for these years. [*Id*.].

On October 29, 2009, Plaintiff filed the pending motion against Defendant, and, on the next day, filed a supporting brief. [Dkt. No. 33 & Dkt. No. 34]. Plaintiff argues, first, that because Defendant did not file a deed in the deed records for Webb County until 2007, the IRS can rely on chain of title, and consequently that the federal tax liens against the Decedent attach to the 33.5 acre tract and associated portion of mineral interests. [Dkt. No. 34 at 8]. Next, pursuant to 26 U.S.C. § 7403, Plaintiff requests that the Court foreclose the existing liens on these properties and also order a sale of them. [*Id*. at 10]. On the other hand, Defendant filed no response to Plaintiff's motion, and has otherwise failed to submit any evidence to controvert the evidence presented by Defendant.

On December 9, 2009, Plaintiff filed a stipulation of dismissal as to its claims against Galvan, Deborah Perez, and Julio Perez, III. [Dkt. No. 35]. This stipulation did not affect

Plaintiff's claims against Defendant, however.

## II.     DISCUSSION

### A.     Standard Governing Summary Judgment

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The initial burden, borne by the moving party, requires a showing to the Court of the basis for the motion, as well as an identification of the portions of the record "which [the moving party] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All facts and evidence must be taken in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

The evidentiary standard for summary judgment motions is provided by Federal Rule of Civil Procedure 56(e). The rule states in part:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.

FED. R. CIV. P. 56(e)(1). Moreover, in responding to a properly supported motion for summary judgment, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in this rule-set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). If a party does not so respond,

summary judgment should be entered. *See id.*

### B. Whether Federal Tax Liens Attach to the Property At Issue and Enjoy Priority Over Defendant's Deed

Plaintiff asserts that the federal tax liens recorded against the Decedent attach to both the 33.5 acre tract and the associated portion of mineral interests previously held by the Decedent. "While state law determines whether the taxpayer has any rights to the property in question, federal law determines whether a federal tax lien will attach to that property or right." *Norem v. Norem*, No. 3:07-CV-0051-BF(G), 2008 WL 2245821, at *3 (N.D. Tex. June 2, 2008) (citing *United States v. Bess*, 357 U.S. 51, 57 (1958)). Section 6321 of the Internal Revenue Code provides as follows:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321 (2002). More succinctly, "[a] federal tax lien can attach 'all property and rights to property, whether real or personal' belonging to a delinquent taxpayer." *Prewitt v. United States*, 792 F.2d 1353 (5th Cir. 1986) (quoting 26 U.S.C. § 6321). The lien arises on the date the assessment is made. 26 U.S.C. § 6322 (2002). But such a lien is invalid against several classes of persons, including "any purchaser[s]", until notice of the lien has been filed. 26 U.S.C. § 6323(a), (f).[4]

In considering whether a federal tax lien enjoys priority over the interests of another party, courts generally apply the common law principle of "the first in time is the first in right." *Hanafy v. United States*, 991 F.Supp. 794, 800 (N.D. Tex. 1998) (quoting *U.S. By and Through*

---

[4] As provided in the Treasury Regulations, a purchaser is a "person who . . . acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice." 26 C.F.R. § 301.6323(h)-1(f) (2008).

*I.R.S. v. McDermott*, 507 U.S. 447 (1993)).  However, "[t]o the extent that § 6323(a) is applicable, it modifes the rule to require the IRS to have filed a notice of federal tax lien 'first in time' to be 'first in right' over a judgment lien creditor."  *Cooper Indus., Inc. v. Compagnoni*, 162 F.Supp.2d 702, 707 (S.D.Tex. 2001) (citing 26 U.S.C. § 6323(a), (f)).

In this case, Plaintiff's uncontested evidence shows that the IRS recorded its first Notice of Federal Lien on May 5, 1989, in Webb County, TX, where the property at issue is located.[5] On the other hand, Defendant did not purchase the property until 1992 and did not record his deed in the deed records of Webb County, TX, until May 2, 2007.[6] [Dkt. No. 34, Ex. 6]. And, during his deposition, Defendant conceded that, when he purchased the 33.5 acre tract from the Decedent, he did not check the deed records to determine whether any liens existed against the property. Therefore, Defendant received the property at issue subject to the federal tax liens established by the IRS. These liens enjoy priority over Defendant's deed.

Moreover, while Defendant later entered into an agreement to sell the tract to Antonio Izaguierre, this conveyance does not affect the priority of the federal tax liens. First, Defendant's own purchase is not protected by the pertinent Texas recording statutes. Under Texas law, "[a] conveyance of real property or an interest in real property . . . is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law."  TEX. PROP. CODE. ANN. § 13.001 (Vernon 2004).  In turn, to be effectively recorded, a conveyance "must be recorded in the county in which a part of the property is located."  TEX. PROP. CODE. ANN. §

---

[5] Plaintiff recorded its second Notice on September 22, 1993, and filed its third and fourth Notices on November 17, 2004. These notices were also filed in Webb County, TX.

[6] The Court notes that, during his deposition, Plaintiff indicated that he recorded the deed in 2003. [Dkt. No. 34, Ex. 16 at 18 ("Q: [D]id you record the deed in the deed records for Webb County? A: In 2003? Yes, ma'm. When I got the minerals, that's when I recorded it.")]. However, Defendant has not filed a summary judgment response, and thus has not provided any corroborating evidence to support his deposition testimony. The Court thus finds that the deed was recorded on May 2, 2007.

11.001 (Vernon 2004). As noted, the Decedent did not record his deed until 2007, and Plaintiff therefore had no notice of the Decedent's ownership of the tract.

Secondly, as noted by the Supreme Court, a subsequent transfer of property does not destroy a previously attached federal tax lien. *See Bess*, 357 U.S. at 57 ("The transfer of property subsequent to the attachment of the lien does not affect the lien, for 'it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere * * *.'") (quoting *Burton v. Smith*, 13 Pet. 464, 483 (1958)). For these reasons, the IRS is entitled to foreclose on the property at issue to recover the balance of the liens established against the Decedent.

Since the Government has established the merit of its lien upon the 33.5 acre tract and the associated portion of mineral interests, the Court may order the sale of these properties. *See* 26 U.S.C. § 7043(c) (2002) (providing that, where a claim of the United States upon a property is established, courts may decree a sale of property). For these reasons, Plaintiff's Motion for Summary Judgment is hereby **GRANTED**. Accordingly, the Court **ORDERS** as follows:

1. Plaintiff's tax liens against the Decedent are foreclosed against the 33.5 acre tract, more particularly described as follows: Tract A, containing 33.5 acres out of that certain partition of a 49.37 acre tract within Share No. 3 in Survey No. 729 and 72.11 acres out of Survey 2257, in Webb County, Texas;

2. Plaintiff's tax liens against the Decedent are foreclosed against the portion of mineral interests associated with the 33.5 acre tract that the Decedent transferred to Defendant;

3. The 33.5 acre tract and associated mineral interests described above shall be sold pursuant to an order for sale to be entered by the Court. The sale proceeds should be applied first to the expenses of the sale, then to pay any county taxes owed to the Webb County Tax-Assessor Collector. The net proceeds will be applied to the tax debts of the estate of the Decedent; and

4. Plaintiff shall recover its costs.

   IT IS SO ORDERED.

   Signed this 11th day of February, 2010, in Laredo, TX.

   _____
   Micaela Alvarez
   UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**